[No. 379-1.    Division One—Panel 2.    April 26, 1971.]

PAUL J. ZOROTOVICH, *Respondent and Cross-appellant,* v.
WASHINGTON TOLL BRIDGE AUTHORITY *et al., Appellants.*

*Martin, Niemi & Burch, Edward C. Burch,* and *Reed, McClure, & Moceri,* by *J. E. Thonn* and *William R. Hickman,* for appellants.

*Horswill, Keller, Rohrback, Waldo & Moren, Dwayne A. Richards,* and *Elizabeth J. Bracelin,* for respondent and cross-appellant.

SWANSON, J.—Defendants, Washington Toll Bridge Authority ("Toll Bridge") and Boyd D. Simmons and wife, appeal from an order granting Paul Zorotovich a new trial. Plaintiff Zorotovich cross-appeals and assigns error to the trial court's failure to give his requested instruction defining the Toll Bridge's duty of care as being the "highest degree of care" rather than "ordinary care" as stated in the court's instructions to the jury.

On July 4, 1967, Paul Zorotovich went to the Toll Bridge's Kingston ferry terminal to buy a ticket as a foot passenger to ride the ferry to Edmonds. Mrs. Boyd Simmons who had been waiting in line in her station wagon which was pulling a small 12-foot camping trailer drove up to the ticket booth.[1] After purchasing her ticket she started to move forward but saw Zorotovich on the other side of the street about to cross in front of her. She stopped and allowed Zorotovich to cross in front of her car. Zorotovich testified that he had asked where he should get his ticket. "I yelled something to Mr. Huggart [the ticket taker], and a few words were exchanged like 'Is this where I get my ticket?' And it was real quicklike. And he said, 'Yes.'" Zorotovich then walked in front of the Simmons car to the triangle-shaped island at the end of the booth. As Mrs.

---

[1] The ticket booth is a small structure housing the ticket seller with a small triangle-shaped concrete island at each end.

Simmons then proceeded forward, he moved up toward the toll booth ticket window between the car and the toll booth. He conceded he knew that Mrs. Simmons' car was pulling a trailer and explained the accident in these words:

> Well, I proceeded to go across here, and I was in front. I got over here and I stepped up on this little—there's a cement curbing here, looks like a little cement island, and I stepped up here. Then, from here, I stepped up on this next platform, which is right here.
>
> As I proceeded, I got about right here, and as I was going—I was walking this way, Mr. Huggart didn't say any warnings or anything. I just kept going, and I saw Mrs. Simmons pull up. I saw the car go by and assumed, now I'm over here, I'm safe.
>
> Now, I happened to glance up, and this trailer was coming from—right like this, and it kind of looked like —in fact, I couldn't believe it. There was no time to think, so I reacted.
>
> So I went sideways, I mean right against the building, and flattened myself out so she'd miss me. Well, she got me right here.

It was respondent's theory that the Toll Bridge was negligent in not providing safe pedestrian approaches and control, and that the Toll Bridge's agent, ticket taker Huggart, was negligent in directing him to stand by the side of the ticket window—a place Huggart should have known was dangerous because of the limited space between the side of the ticket booth and the Simmons' oncoming car and trailer. Zorotovich also claims that appellant Simmons was negligent in proceeding forward and driving into him.

It is appellants' argument that Zorotovich walked into the side of the trailer as it pulled away from the ticket booth, after he deliberately and negligently left a place of safety—the small concrete island at the end of the ticket booth where he was standing when the Simmons car drove ahead. The jury returned a defense verdict, but the trial judge ordered a new trial and reasoned that substantial justice was not done because he had failed to instruct the jury on either the emergency or last clear chance doctrine.

The order refers to some general categories of evidence as the basis for making such a determination.

The appellants Simmons and Toll Bridge contend that the order does not meet the requirements of CR 59(f)[2] in that it does not indicate whether it is based upon the record or upon facts and circumstances outside the record, nor does it state definite reasons of law and fact as the rule requires. If this is true, as the appellants claim, the trial court must be reversed. *Christy v. Davis,* 71 Wn.2d 81, 426 P.2d 493 (1967); *State v. Collins,* 72 Wn.2d 741, 435 P.2d 538 (1967).

■ The order makes no reference to matters outside the record. Therefore, we presume the reasons supporting it rest upon matters within the record. *Lyster v. Metzger,* 68 Wn.2d 216, 412 P.2d 340 (1966); *Workman v. Marshall,* 68 Wn.2d 578, 414 P.2d 625 (1966). The trial court's order for a new trial is based on two grounds: (1) on CR 59(a)(9), that substantial justice has not been done, and (2) CR 59(a)(8), error in law occurring at the trial and specifically the denial of a requested instruction on either the last clear chance or emergency doctrine.

■ In considering the first ground, the failure of substantial justice, the trial court may exercise its discretion. *Olpinski v. Clement,* 73 Wn.2d 944, 442 P.2d 260 (1968). But CR 59(f) requires that the court give "definite reasons of law and facts for its order." The reference in the order[3]

---

[2]CR 59(f) states: "In all cases where the trial court grants a motion for a new trial, it shall, in the order granting the motion, state whether the order is based upon the record or upon facts and circumstances outside the record which cannot be made a part thereof. If the order is based upon the record, the court shall give definite reasons of law and facts for its order. If the order is based upon matters outside the record, the court shall state the facts and circumstances upon which it relied."

[3]The order states in part: "[T]he Court . . . relies upon the following matters:

"(a) The physical circumstances and surroundings of the ferry booth at the Kingston Terminal as described in the testimony of the parties, and as specifically set forth in plaintiff's Exhibit No. 1, the photo of the ferry booth;

"(b) The testimony of Vernon D. Huggart, this Court having found that he was the managing agent of the defendant, Washington Toll

to the testimony of Vernon Huggart, the toll bridge ticket seller, the physical circumstances of the ferry booth, and the testimony of Mrs. Simmons, and nothing more, falls short of substantial compliance with the mandate of CR 59(f). The trial court's basis for granting a new trial for failure of substantial justice rests solely upon a disagreement with the jury's interpretation of the evidence. *State v. Collins*, 72 Wn.2d 741, 745, 435 P.2d 538 (1967).

■ ■ As for the second ground given for granting a new trial, error in law, we observe that the trial court has no discretion. *Detrick v. Garretson Packing Co.*, 73 Wn.2d 804, 812, 440 P.2d 834 (1968). Respondent Zorotovich proposed instructions stating both the first and the second phase of the formula for the application of the doctrine. *See Leftridge v. Seattle*, 130 Wash. 541, 228 P. 302 (1924). But if one phase of the doctrine applies, the other does not. *Nichols v. Spokane Sand & Gravel Co.*, 64 Wn.2d 219, 222, 391 P.2d 183 (1964).

■ ■ As to the defendant Simmons, neither phase of the last clear chance doctrine applies because no substantial evidence exists to support a contention that Mrs. Simmons either saw or should have seen Zorotovich in a position of peril. *See See v. Willett*, 58 Wn.2d 39, 360 P.2d 592 (1961). He had crossed in front of her and stood upon a small island at the end of the ticket booth, a position he assumed to be safe. In fact, no evidence was offered to indicate that it was unsafe. It therefore cannot be contended that he was in a position of peril when she saw him. Thus, the first phase of the doctrine does not apply; but

Bridge Authority at the Kingston Terminal according to the intent and purpose of Washington's Civil Rules for Superior Court No. 26(d)(2), relating to the control and manner in which pedestrian traffic is handled by the defendant, Washington Toll Bridge Authority when purchasing their tickets to the ferry at the said terminal;

"(c) The testimony of Vernon D. Huggart regarding his conduct and his observations regarding the events immediately preceding the accident involved herein, and how the accident occurred; and

"(d) The defendant Mrs. Simmons' testimony regarding her conduct and observations immediately preceding and during the time the accident complained of occurred."

neither does the second phase because respondent's alleged negligent conduct continued up until the moment of impact. As Zorotovich, himself, stated:

Q Okay. You have now put a red square on Plaintiff's Exhibit 1 to indicate where you stood when Mrs. Simmons' car started moving, is that right, where you were standing? A I didn't stand. *I never did stop.* The only place I stopped was right up here. When I saw the trailer coming right for me, that's the only time I stopped and then I turned sideways. That's the only time I stopped, when I reached the other side.

(Italics ours.) Later, on cross-examination, Zorotovich said:

A I thought as long as I was on that island there and on that pavement, I assumed I was safe. Q How many steps were you from that point where you were protected by the ticket booth to the point where you were hit? How many steps did you go? A I must have taken about five steps. I know they weren't long ones. Q And all that time you were looking ahead? A Yes, straight ahead. Q And all that time you didn't see the trailer until it was right upon you; is that right? A That's correct.

Even if respondent's negligence had ceased and there was sufficient evidence to say that Simmons should have seen his condition of peril, there was no clear chance to avoid the accident. The importance of this factor was discussed in *Pasero v. Tacoma Transit Co.,* 35 Wn.2d 97, 100, 211 P.2d 160 (1949), and the court pointed out the distinction between last *clear* chance and last *possible* chance:

The doctrine of last clear chance contemplates a last *clear* chance, not a last *possible* chance. This distinction has sometimes been overlooked. Last clear chance implies thought, appreciation, mental direction, and the lapse of sufficient time to effectually act upon the impulse to save another from injury. There must be an appreciable interval of time intervening between a collision and the moment when the driver of an automobile has knowledge or notice of the danger in which the other party has been placed. [Citations omitted.]

Here, Mrs. Simmons had no opportunity for thought, appreciation, mental direction, or time within which to act.

There is no evidence of a clear chance to avoid the accident.

As to the application of the last clear chance doctrine to appellant Toll Bridge, respondent contends that the Toll Bridge's agent Huggart was negligent in telling respondent to obtain his ticket at the unsafe ticket booth and so incurred a further duty to avoid the resulting injury. But even if we accept respondent's theory of the accident, only the first phase of the last clear chance doctrine could apply. This is because Huggart *actually saw* Zorotovich in a position of peril.[4]

However, as has been previously noted, under either phase of the doctrine a defendant must have something more than a last possible chance to avoid the accident. Huggart, being inside the toll booth, did the only thing he could do—shout a warning. There is no evidence that there was any appreciable interval of time between the impact and the time Huggart saw Zorotovich in a place of danger. Huggart did not have even a possible chance to act other than as he did, and certainly not a last clear chance to avoid the injury.

The trial court also indicated in its order that if a last clear chance instruction was not appropriate, an emergency instruction ought to be given, but we find no contention that the respondent made a wrong choice or an unwise choice when he found himself in a place of danger just prior to the impact. The emergency rule applies only to conduct *after* a person has been placed in a perilous posi-

---

[4]There are two different situations where last clear chance applies. "In the one, the plaintiff's negligence may continue up to the time of the injury if the defendant *actually sees* the peril; in the second, the plaintiff's negligence must have terminated if the defendant did not actually see the peril, but by the exercise of reasonable care *should have seen* it.

"This rule, as we have said, has been somewhat confused by later decisions which have failed to recognize the distinctions between situations where the defendant actually saw and situations where, by the exercise of reasonable care, the defendant should have seen the position of the plaintiff." *Leftridge v. Seattle,* 130 Wash. 541, 545-46, 228 P. 302 (1924).

tion by the negligence of another. *Sandberg v. Spoelstra*, 46 Wn.2d 776, 285 P.2d 564 (1955). This proposed instruction was likewise correctly refused by the trial court.

Finding neither a failure of substantial justice nor an error at law, there is no support for the order. It must be stricken unless there is merit to respondent Zorotovich's cross-appeal. As indicated in *Worthington v. Caldwell*, 65 Wn.2d 269, 396 P.2d 797 (1964), an order granting a new trial may be sustained on a ground not relied upon by the trial court in promulgating such an order. Respondent Zorotovich argues in his cross-appeal it was error to refuse his requested instruction that appellant Toll Bridge as a common carrier owed him a duty of great care or the highest degree of care. A common carrier does owe its passengers the highest degree of care consistent with the practical operation of its mode of transportation. *Boyd v. Edmonds*, 64 Wn.2d 94, 390 P.2d 706 (1964); *Peterson v. Seattle*, 51 Wn.2d 187, 316 P.2d 904 (1957). But, because Zorotovich was not in the act of boarding, entering, riding, or alighting from the carrier's conveyance, there is a question of fact as to whether or not Zorotovich was a passenger and thus entitled to the highest degree of care.[5] Although Zorotovich did request an instruction as to the carrier's higher degree of care, he did not request an instruction that presented to the jury the issue of his status as a passenger. His proposed instruction stated that he was a passenger and so determined the question as a matter of

---

[5]Other than when a person is in the act of boarding, entering, riding or alighting from a carrier's conveyance, there is a question of fact as to whether or not the passenger status has been created. It is even in doubt as to whether or not the carrier should be held to a higher standard of care for the maintenance of its platforms or approaches to its station or landing places, as opposed to its actual transportation functions. *See Hart v. King County*, 104 Wash. 485, 177 P. 344 (1918), wherein such a distinction was made. For a collection of cases where ordinary care is the standard as to carriers' platforms and stations, see 3 T. Shearman & A. Redfield, Negligence § 508 n.96 (C. Zipp ed. 1941, Supp. 1970); 14 Am. Jur. 2d *Carriers* § 965 n.8 (1964). For a collection of cases where highest care is the standard, see 3 T. Shearman & A. Redfield, Negligence § 508 n.98 (C. Zipp ed. 1941); 14 Am. Jur. 2d *Carriers* § 965 n.9 (1964).

law, but that issue was for the jury. Therefore, we find that without an instruction allowing for the resolution of his passenger status, the instruction as to the carrier's higher standard of care was properly refused. The trial court is not obligated to give an instruction that is erroneous in any respect. *Impero v. Whatcom County,* 71 Wn.2d 438, 451, 430 P.2d 173 (1967). And even though the trial court did not refuse the instruction for the reason stated, its refusal will be upheld on appeal.

> We have consistently held that, if the judgment of the trial court can be sustained upon any theory within the pleadings and the proof, it will not be reversed. [Citations omitted.]

*Lundgren v. Kieren,* 64 Wn.2d 672, 677, 393 P.2d 625 (1964). *Northwest Collectors, Inc. v. Enders,* 74 Wn.2d 585, 595, 446 P.2d 200 (1968).

The trial court is directed to vacate the order granting a new trial and reinstate the jury verdict.

FARRIS, A.C.J., and JAMES, J., concur.

Petition for rehearing denied July 19, 1971.

Review granted by Supreme Court September 21, 1971.