IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| ROUZBEH SAFAVI AMINPOUR, | ) | No. 81868-6-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| MARYAM AMINPOUR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | UNPUBLISHED OPINION |
| v. | ) | |
| | ) | |
| CHRISTIAN MYLES ENGLUND, | ) | |
| | ) | |
| Appellant. | ) | |

BOWMAN, J. — Christian Englund appeals the trial court's order granting reconsideration of its decision to deny an anti-harassment petition and its subsequent decision to issue the anti-harassment order against him. Englund argues the court erred in concluding the substantial injustice prong of CR 59(a)(9) warranted reconsideration. We reverse and remand to vacate the anti-harassment order.

FACTS

In January 2019, Rouzbeh and Maryam Aminpour bought two parcels of land adjoining Englund's property. A gravel driveway historically used by Englund and his family to access their property crossed a portion of the Aminpours' land. Englund had no easement to use the driveway. In March

Citations and pin cites are based on the Westlaw online version of the cited material.

2019, the Aminpours proposed a contract for a limited easement but Englund "did not feel comfortable with many of the provisions of the contract."

The relationship between the parties deteriorated and the Aminpours installed security cameras on their land. The cameras captured Englund walking around with a 30-inch machete, "act[ing] as though he was chopping plants." The Aminpours felt threatened by Englund's actions and installed more security cameras along the driveway. They asked Englund to "discontinue displaying the machete on their property," but he "chose to escalate his alarming behavior."

Englund said that the Aminpours never asked him to stop using a machete. He claimed he purposefully used a machete instead of "higher-risk power tools" to "clear brush" and "keep quiet peace for the neighbors and animals." He added that the Aminpours were not present in the area when he used the machete. Englund also said he used the machete only during the summer and fall "because the weeds only are long enough around July, so it definitely has a seasonal aspect."

The Aminpours complained that Englund harassed them in other ways as well. They pointed to an incident where Englund "nearly hit" Rouzbeh[1] with his car. And they accused Englund of making false accusations to the King County Department of Local Services Permitting Division that delayed their home construction and defaming their character to other neighbors. They also captured Englund on video saying he " 'steps on' people like [the Aminpours] and violently simulat[ed] doing so."

---

[1] We refer to Rouzbeh Aminpour by his first name when necessary for clarity and intend no disrespect by doing so.

On May 27, 2020, the Aminpours petitioned for an anti-harassment order against Englund in King County District Court.  The court issued a temporary protection order but transferred the case to superior court because "the action involves title or possession of real property."  The superior court scheduled the matter for a full hearing by video teleconference on Tuesday, June 23, 2020. Attorneys represented each party and both sides submitted written affidavits.

The Friday afternoon before the hearing, the Aminpours' attorney tried to submit video footage from their security cameras through the court's electronic filing system but could not upload the files within the correct sizing parameters. At the hearing, the Aminpours' attorney explained to the trial court that he was unable to upload the videos.  The judge offered to continue the hearing so the attorney could resubmit the videos.  After consulting with the Aminpours, counsel elected to proceed without the videos, relying on witness testimony, affidavits, and screenshots from the videos to describe Englund's conduct.

The court heard testimony, reviewed the affidavits, and considered exhibits submitted by both parties.  It denied the anti-harassment order because the preponderance of the evidence did not show a "course of conduct" establishing harassment as required by RCW 7.92.030(1).

On July 6, 2020, the Aminpours moved the court to reconsider its ruling under CR 59(a)(9), claiming that "substantial justice was not done" as the court "was unable to view critical evidence because the Aminpours were unable to [file] video evidence of Respondent Christian Englund's threatening conduct."  They submitted the videos as exhibits to their motion to reconsider.  Englund opposed

the motion. The superior court granted the Aminpours' motion to reconsider, stating, "[T]he court viewed the videos and found them to be compelling evidence of unlawful harassment." It then issued the anti-harassment order against Englund to protect only Rouzbeh.

Englund appeals.

ANALYSIS

Englund contends the trial court abused its discretion in considering the Aminpours' motion to reconsider under CR 59(a)(9) because the Aminpours had the surveillance videos for nearly a year before the hearing, were given the opportunity to continue the hearing to present the evidence, and made a tactical decision to proceed without the videos. We agree.[2]

Motions to reconsider are left to the sound discretion of the trial court, and we will not reverse a trial court's ruling absent a showing of manifest abuse of discretion. Wilcox v. Lexington Eye Inst., 130 Wn. App. 234, 241, 122 P.3d 729 (2005). A court abuses its discretion when it applies the wrong legal standard or bases its decision on an erroneous application of the law. State v. Cox, 17 Wn. App. 2d 178, 186, 484 P.3d 529 (2021). A trial court also abuses its discretion if the record does not support its conclusions. Hundtofte v. Encarnacion, 181 Wn.2d 1, 10, 330 P.3d 168 (2014).

---

[2] We note that Rouzbeh's appellate brief cites language from unpublished appellate decisions or the unpublished portions of certain decisions without the proper advisory warnings. We caution against this practice and encourage all parties to follow the directive in Crosswhite v. Dep't of Soc. & Health Servs., 197 Wn. App. 539, 544, 389 P.3d 731 (2017), that "a party must do more than simply identify the opinion as unpublished. The party must point out that the decision has no precedential value, is not binding on any court, and is cited only for such persuasive value as the court deems appropriate. The party should also cite GR 14.1."

CR 59(a) lists several grounds on which an "order may be vacated and reconsideration granted." Under CR 59(a)(9), a court may reconsider its order where "substantial justice has not been done." See Zorotovich v. Wash. Toll Bridge Auth., 4 Wn. App. 801, 804-05, 484 P.2d 928, reversed on other grounds, 80 Wn.2d 106, 491 P.2d 1295 (1971). But courts should rarely grant reconsideration for lack of substantial justice "given the other broad grounds available under CR 59." Lian v. Stalick, 106 Wn. App. 811, 825, 25 P.3d 467 (2001).

The Aminpours argued in their motion to reconsider that substantial injustice compelled reconsideration of the court's order denying their petition for an anti-harassment order. They claimed the hearing was unjust because they were unable to file their videos "in the midst of the COVID-19 pandemic,"[3] so the court "did not have the opportunity to view the recordings of Mr. Englund's alarming conduct."[4] But the record does not support Aminpours' suggestion that COVID-19 precluded them from presenting their video evidence.

The Aminpours had the surveillance video footage several months before the hearing on their anti-harassment petition but did not try to upload them to the court's electronic filing system until the Friday afternoon before their hearing. At the hearing, the Aminpours' attorney explained that he was unable to upload the

---

[3] COVID-19 is the World Health Organization's official name for "coronavirus disease 2019," first discovered in December 2019 in Wuhan, China. COVID-19 is a severe, highly contagious respiratory illness that quickly spread throughout the world.

[4] In its written ruling, the trial court does not explain what injustice warranted reconsideration of its order denying the Aminpours' petition. It states only that "[a]t the hearing in this matter, the court did not have access to the referenced videos and relied solely on the description of the Respondent's actions. On Reconsideration, the court viewed the videos and found them to be compelling evidence of unlawful harassment."

videos. He told the court that he would like the videos to be considered, but "if not[,] we can go forward without them and have the petitioner certainly describe the contents of the video." The court responded that "I'm not telling you how to proceed counsel. If you want the Court to review those videos we can continue this [hearing] but it's up to you." After consulting with his clients, counsel told the court, "I can still go forward without them."

Nothing amounting to a substantial injustice precluded the Aminpours from supporting their petition for an anti-harassment order with video evidence. Counsel's choice to proceed without the evidence amounts to a strategic decision. That the strategy failed is not an injustice under CR 59(a)(9) warranting reconsideration of the court's original decision to deny the anti-harassment petition.

We reverse and remand to vacate the anti-harassment order.[5]

Brennan, J.

WE CONCUR:

---

[5] Rouzbeh requests attorney fees and expenses on appeal under RAP 18.1 and former RCW 10.14.090(2) (1992), which states, "The court may require the respondent [in an anti-harassment action] . . . to reimburse the petitioner for costs incurred in bringing the action, including a reasonable attorney's fee." Because Rouzbeh does not prevail on appeal, we deny his request for attorney fees.

6