[No. 33-40228-1.   Division One.   February 16, 1970.]
Panel 1

ROBERT BENJAMIN, *Respondent,* v. TIM RANDELL, *Appellant.*

*Skeel, McKelvy, Henke, Evenson & Betts* and *Frederick V. Betts,* for appellant.

*Millhouse & Nelle* and *Richard A. Nelle,* for respondent.

JAMES, C. J.—This is an appeal from an order granting a new trial limited to the issue of damages.

Fifteen-year-old Robert Benjamin was injured when struck by a surveyor's pole thrown by 15-year-old Tim Randell. The pole, 1 inch in diameter and 7½ feet long, with a metal tip on one end, was found by one of four boys who were walking home from school together. Their route was along a 1-lane gravel road paralleling the shore of Puget Sound near Blaine.

As might be expected, the pole immediately became a javelin, and an impromptu throwing competition followed. At first all four boys threw from the same point on the road. They soon decided to pair off—two boys at each end of the improvised throwing course. Benjamin and Randell were at opposite ends of the course. The boys were able to throw the pole 50 to 60 feet. Sometimes the thrower would call out a warning.

After a while the boys lost interest in the javelin throw and devoted the next 20 to 30 minutes of their energies to throwing rocks at ducks and other suitable targets. While Benjamin was engaged in picking up rocks about 5 feet off the road, Randell picked up the pole again and threw it down the road as before. Randell testified that he called no warning, intending the pole to fall across the road from where Benjamin was standing. He testified that the pole hit his shoulder as he threw, causing it to be deflected and launched unexpectedly toward Benjamin. The boy who was with Randell perceived Benjamin's peril, but his shouted

warning tragically served only to cause Benjamin to turn and be struck in the face.

Benjamin's injuries were serious, painful, and permanent. Randell conceded that Benjamin's special damages for medical care totaled $1,255.43. The jury returned a verdict for $1,500.

Benjamin moved for judgment notwithstanding the verdict of the jury and asked the trial judge to enter judgment for an amount "adequate to compensate" Benjamin for his injuries, or, in the alternative, for a new trial.

The trial judge denied Benjamin's motion to impose an additur, but did, in a carefully drawn order, grant a new trial as to damages only. The order granting the new trial recites that the order is based entirely upon the record and concludes that substantial justice was not achieved because the verdict reflects an award of only $244.57 for general damages. The order states that the result is so outrageous as to shock the judge's conscience and his sense of justice and fair play.

Randell appeals, asking that judgment be entered upon the verdict or that, if a new trial be ordered, it be on all issues—liability as well as damages.

■ A trial judge's responsibilities in ruling on a motion for a new trial are stated in *Olpinski v. Clement,* 73 Wn.2d 944, 951, 442 P.2d 260 (1968):

> The trial court has the duty to see that justice prevails. He has the power in the exercise of his discretion to grant a new trial where substantial justice has not been done, but, to facilitate appellate review, he must state his reasons.

■ Nor will the trial judge's ruling on a motion for a new trial be reversed except for an abuse of discretion. A much stronger showing is required to reverse an order *granting* a new trial than to reverse an order *denying* a new trial. *Olpinski v. Clement, supra.*

The impact of the javelin broke Benjamin's jaw. Two of his teeth, together with adhering pieces of jaw bone, had to be surgically removed. Another tooth had been driven

through his upper lip, an upper molar had been broken off below the gum line, and two adjoining teeth had been broken. Still another tooth which appeared to be intact died as a result of nerve injury. Eventually Benjamin lost a total of 10 teeth. Surgical repair of the glandular structure of the area of his mouth below his tongue was required. He was hospitalized for 2 days. He now lisps and must wear upper and lower dentures.

The trial judge did not abuse his discretion in determining that an award of $244.57 for general damages was so inadequate as to reflect a failure of substantial justice. See, e.g., *Ide v. Stoltenow*, 47 Wn.2d 847, 289 P.2d 1007 (1955); *Shaw v. Browning*, 59 Wn.2d 133, 367 P.2d 17 (1961).

In his memorandum decision denying Benjamin's motion for an additur and granting a new trial as to damages only, the trial judge made this statement:

> It would be simple and easy for the trial court, to say to the defendant—accept an *additur* of, say, $5000.00, or suffer a new trial. But that would be undertaking the jury's function in establishing the exact amount that should be awarded for general damages.

RCW 4.76.030 provides in part as follows:

> If the trial court shall, upon a motion for new trial, find the damages awarded by a jury to be so excessive or inadequate as unmistakably to indicate that the amount thereof must have been the result of passion or prejudice, the trial court may order a new trial or may enter an order providing for a new trial unless the party adversely affected shall consent to a reduction or increase of such verdict, : . .

Concerning the amount of the verdict, the trial judge, in his memorandum decision, said this:

> The record herein does not establish with mathematical certainty and precision that passion or prejudice was a cause of the inadequate verdict. Yet, I am so shocked by the inadequacy of the verdict that I am convinced that it was wrong in amount, and that it unmistakably indicates that it was the result of passion or prejudice. ·. . ·

In view of the tortuous history of the role of trial

judges' discretion in granting a new trial, we understand Judge Hardin's hesitancy to impose an additur. See Trautman, *New Trials for Failure of Substantial Justice,* 37 Wash. L. Rev. 367 (1962). The increase or reduction of a verdict as an alternative to a new trial is a procedure designed to achieve a just result and to avoid multiple trials. It is a procedure which, disciplined by the exercise of sound discretion by the trial judge, should be encouraged by appellate courts. Here an additur could properly have been imposed, but the trial judge did not abuse his discretion in declining to do so.

In his memorandum decision, the trial judge also said,

Those who follow the profession of law suspect at times that jurors equate the right of one party to compensatory damages with the degree of negligence of the other. This can only be conjecture, of course, but should it be a fact, there can be no doubt that a verdict based thereon would not only be contrary to the facts and law of the case but would also work a denial of substantial justice.

The motion for new trial is granted, as to the matter of damages only.

The trial judge recognized that juries sometimes compromise in reaching their verdicts. Whether a "compromise" verdict is a denial of substantial justice is, of course, debatable. A compromise is the essential ingredient in the application of the doctrine of comparative negligence. But in any event the Supreme Court of this state has aligned itself with those "contributory negligence" jurisdictions which require a new trial on all issues where liability is not clear. *Myers v. Smith,* 51 Wn.2d 700, 321 P.2d 551 (1958); *Greenwood v. Olympic, Inc.,* 51 Wn.2d 18, 315 P.2d 295 (1957).

And this is not a case where liability is clear. Whether 15-year-old Randell acted as a reasonably careful boy of the same age, intelligence, maturity, training, or experience would have acted under the same or similar circumstances, is a difficult question of fact. Upon retrial, the jury should be given an opportunity to achieve a just result by deter-

mining the issue of liability as well as the issue of damages. See *Myers v. Smith, supra; Shaw v. Browning, supra.*

Randell also assigns error to the giving of the following instructions:

> Negligence is the failure to exercise ordinary care. It is the doing of some act which a reasonably careful person would not do under the same or similar circumstances or the failure to do something which a reasonably careful person would have done under the same or similar circumstances.

Instruction 4.

> Ordinary care means the care a reasonably careful person would exercise under the same or similar circumstances.

Instruction 5. In arguing that these instructions were incorrectly submitted because they define the standard of *adult* conduct, Randell acknowledges that instruction 11 correctly states the standard of care required of a *minor*. Instruction 11 is as follows:

> In considering the alleged negligence of the defendant, you are instructed that it was the duty of the defendant to exercise the same care that a reasonably careful person of the same age, intelligence, maturity, training and experience would exercise under the same or similar circumstances.

Randell asserts, however, that the three instructions are inconsistent and confusing.

All three instructions were taken from Washington Pattern Jury Instructions and were used by the trial judge in the manner recommended in the notes on the use of the instructions. The jury was properly instructed to consider the instructions as a whole.

The assignment of error is without merit. We would recommend, however, that instructions 4, 5, and 11 be given in sequence.

■ Randell also assigns error to the giving of instruction 6:

> You are instructed that any person who throws or hurls an instrumentality likely or capable of doing injury

to another person has a duty to give timely warning of his intent to throw such instrumentality in order to allow such other persons to take necessary precautions for their own protection.

In effect, this instruction told the jury that it was negligence as a matter of law for Randell to have thrown the pole without warning. The jury should have been permitted to decide whether Randell, in throwing without warning, failed to exercise the same degree of care that a reasonably careful 15-year-old boy would have exercised under the same or similar circumstances. Whether Randell's failure to shout a warning was negligence, is a question of fact.

The case is remanded for a new trial on all issues. On retrial, instruction 6 should not be given. Costs to follow judgment on retrial.

FARRIS and SWANSON, JJ., concur.