[No. 2876–3.    Division Three.    June 28, 1979.]

HARRY E. BERRY, *Respondent,* v. COLEMAN
SYSTEMS COMPANY, *Appellant.*

*Winston & Cashatt* and *Stanley D. Moore,* for appellant.

*Critchlow, Williams, Ryals & Schuster* and *David E. Williams,* for respondent.

ROE, J.—In this products liability case, plaintiff Berry was injured in an industrial accident by the explosion of a grinding stone. He sued defendant Coleman Systems Company (Coleman), the manufacturer and supplier of the stone, upon a strict liability theory. In preparation for trial, Berry sent interrogatories to Coleman; included were the following questions:

No. 68. Please state whether the defendant had received within five years immediately preceding and the period following the alleged occurrence, any *complaints* of injury or unusual occurrences *similar* to those experienced by the plaintiff as alleged.

No. 70. Within the past five years, has any person, firm or corporation brought any *legal action* against the defendant for the defective operation, defects in, or warranties regarding *similar* products?

(Italics ours.) Coleman's manufacturing manager, who completed the interrogatories in California, answered "no" to both questions.

At trial, Coleman produced evidence that Berry's own conduct in disregarding warning instructions on use and misuse of the stone had caused the accident. The jury returned a defense verdict. Berry moved for new trial based upon his post–trial discovery of a 1976 products liability action against Coleman arising from the explosion of a grinding stone.[1] Further investigation revealed that

---

[1] *Ulrich v. Kasco Abrasives Co.,* 532 S.W.2d 197 (Ky. 1976).

Coleman had received 31 complaints of similar injuries or occurrences, and was a party to 13 legal actions involving similar products.

The court granted Berry's motion and ordered a new trial on the grounds that substantial justice had not been done and that the court improperly instructed the jury on the manufacturer's duty to warn.

Relying on *Praytor v. King County,* 69 Wn.2d 637, 419 P.2d 797 (1966), Coleman argues that the trial court erred in granting Berry's motion because the test for "newly discovered evidence" (CR 59(a)(4)) was not met. However, CR 59(a)(9) was the basis for the new trial order; *i.e.,* that substantial justice had not been done. In its memorandum decision, the court stated:

> The Court should not and cannot ignore the failure to reveal complaints and legal actions of the magnitude explained above. Therefore, substantial justice has not been done by the failure of the defendant to adequately answer the interrogatories submitted by the plaintiff, and a new trial is granted.

Coleman's cases are therefore inapposite, even though Coleman interprets "substantial justice" as the equivalent of newly discovered evidence.

██ An appellate court will not reverse an order granting or denying a motion for new trial unless the trial court has abused its discretion. A much stronger showing of abuse of discretion ordinarily will be required to set aside an order granting a new trial than one denying it. *State v. Crowell,* 92 Wn.2d 143, 594 P.2d 905 (1979). *See also Detrick v. Garretson Packing Co.,* 73 Wn.2d 804, 440 P.2d 834 (1968); *Bohnsack v. Kirkham,* 72 Wn.2d 183, 432 P.2d 554 (1967); *Benjamin v. Randell,* 2 Wn. App. 50, 467 P.2d 196 (1970).

More specifically, *Olpinski v. Clement,* 73 Wn.2d 944, 442 P.2d 260 (1968), discussed the trial court's discretion to order retrial on "substantial justice" grounds:

> The trial court has the duty to see that justice prevails. He has the power in the exercise of his discretion to

grant a new trial where substantial justice has not been done, but, to facilitate appellate review, he must state his reasons. We stated, in *Baxter v. Greyhound Corp.* [65 Wn.2d 421, 397 P.2d 857 (1964)], *supra* at 440:

The basic question posed by an order granting a new trial upon this ground, be it a civil or criminal action, is whether the losing party received a fair trial. *State v. Taylor, supra* [60 Wn.2d 32, 371 P.2d 617 (1962)]. And, it is in this area of the new–trial field that the favored position of the trial judge and his sound discretion should be accorded the greatest deference, particularly when it involves the assessment of occurrences during the trial which cannot be made a part of the record, other than through the voice of the trial judge in stating reasons for the action taken.

If the trial judge, in the exercise of his best judgment determines that a fair trial has not been had, he has the alternative, in an appropriate situation, of granting a partial, a conditional, or an unconditional new trial. This decision, in turn, calls for a weighing of factors and values such as the complexity of the issues, the length of the trial, the degree and nature of the prejudicial incidents, the nature and amount of the verdict, the cost of retrial, the probable results, the desirability of concluding litigation, and such other circumstances as may be apropos to the particular situation.

*Olpinski v. Clement, supra* at 951.

The trial court has discretion to order a new trial for failure of substantial justice. *Zorotovich v. Washington Toll Bridge Authority,* 4 Wn. App. 801, 484 P.2d 928, *reversed on other grounds,* 80 Wn.2d 106, 491 P.2d 1295 (1971).

Following a hearing on Berry's motion, the court stated:

After carefully considering the arguments of both parties, the Court concludes that there was a flagrant failure to properly answer these interrogatories, that the answers given were false, and that the answers ultimately given evidence earlier bad faith on the part of the defendant.

We find no abuse of discretion. The detailed memorandum decision substantially satisfies the requirements of CR 59(f)

that the trial court state definite reasons of law and fact to support a new trial order.[2]

The trial court also based the new trial order on improper jury instructions regarding the adequacy of product warnings. Berry submitted proposed instruction No. 16:

> Although faultlessly manufactured, a product can be in a defective condition for lack of adequate warning from the manufacturer concerning the safe manner in which to use it, if, without such warning, it is unreasonably dangerous.
>
> To be adequate, a warning must include an expression of the potential danger involved in the product's use, as well as an expression as to what should be done to avoid such danger.

citing *McCully v. Fuller Brush Co.*, 68 Wn.2d 675, 415 P.2d 7 (1966), and *Haugen v. Minnesota Mining & Mfg. Co.*, 15 Wn. App. 379, 550 P.2d 71 (1976).

This was not given; rather, the trial court gave instruction No. 11, which provided:

> Although faultlessly manufactured, a product can be in a defective condition for lack of adequate warning from the manufacturer concerning the safe manner in which to use it, if, without such warning, it is unreasonably dangerous.
>
> With reference to warning, or lack thereof, the plaintiff has the burden of proving:
>
> (1) that in the absence of an adequate warning the product was dangerous to an extent beyond the contemplation of an ordinary user;
>
> (2) that inadequate warning was given; and
>
> (3) that failure to warn adequately was a proximate cause of plaintiff's injuries.

In a memorandum decision, the trial court stated that it "should have given the jury some guidelines as to what would constitute an adequate warning," and held that

---

[2]CR 59(f) requires a statement of reasons and the order granting a new trial should state whether it is based upon the record or on matters outside the record. The order here refers only in general terms to the memorandum decision.

instruction No. 11 was therefore prejudicially insufficient. We disagree. The instruction was proper as given.

In a strict liability action, the focus is on the product and whether it is reasonably safe from the standpoint of the ordinary consumer. Lack of adequate warnings about either the safe use of the product or its hazardous propensities can render that product unreasonably dangerous.[3] The trial court may rule as a matter of law that warnings are inadequate when, and only when, the danger is clearly latent. In all other cases, the adequacy of both the content and prominence of warnings accompanying a product is a question for the jury, and the court need not furnish guidelines to aid the jury in its determination.[4]

Where, as here, the dangers associated with the use of a product cannot be said to be clearly latent, both the

---

[3]Although inadequate warnings have been termed a "defect" in the same sense as a "design defect" or a "manufacturing defect," *Haysom v. Coleman Lantern Co.*, 89 Wn.2d 474, 480, 573 P.2d 785 (1978), that language is questionable. In *Little v. PPG Indus., Inc.*, 92 Wn.2d 118, 594 P.2d 911 (1979), the Supreme Court stated:

First, it is inaccurate to speak of a properly manufactured but necessarily dangerous product as being in a "defective" condition. As students of the Restatement have observed, it is more appropriate to describe an article bearing an inadequate warning as "unreasonably dangerous," than as "defective." *See* J. Montgomery & D. Owen, *Reflections on the Theory and Administration of Strict Tort Liability for Defective Products*, 27 S.C. L. Rev. 803, 819 *et seq.* (1976), and the annotation at 53 A.L.R.3d 239 (1973). The drafters of the Restatement do characterize the product in this manner in comment *j*, where they say that "[i]n order to prevent the product from being unreasonably dangerous [even though faultlessly made],. the seller may be required to give directions or warning, on the container, as to its use."

*Little v. PPG Indus., Inc., supra* at 121.

Therefore, a product with inadequate warnings is more properly labeled "unreasonably dangerous" than "defective." Even though both parties proposed instructions using the term "defective condition," in view of the above case it might be better to use "unreasonably dangerous" on retrial.

[4]*See* 1 L. Frumer & M. Friedman, *Products Liability* § 8.05[3]A, at 186.18(9) (Release No. 13, 1975), for examples of complicated instructions given in a products liability case. Although these are more specific than the instructions given here, they cannot and do not encompass all the possibilities and guidelines. Hence, we feel that the jury should determine whether the warnings are adequate after considering all the evidence.

question of whether instructions or warnings are adequate to insure safe use of a product, as well as that of whether the dangers involved are so obvious or well known as to eliminate the necessity for detailed warnings, are for the trier of fact.

*Haysom v. Coleman Lantern Co.,* 89 Wn.2d 474, 480, 573 P.2d 785 (1978).

Coleman raises two issues in the event of retrial. First, Coleman asks this court to direct that Berry's violation, if any, of a WAC safety regulation is negligence per se. *Bayne v. Todd Shipyards Corp.,* 88 Wn.2d 917, 568 P.2d 771 (1977); *Kness v. Truck Trailer Equip. Co.,* 81 Wn.2d 251, 501 P.2d 285 (1972).

In *Teagle v. Fischer & Porter Co.,* 89 Wn.2d 149, 570 P.2d 438 (1977), the court instructed the jury that a violation of a safety regulation is negligence as a matter of law. That instruction is correct and may be given if the evidence is sufficient. Before the instruction may be given in this case, Coleman must present evidence regarding Berry's knowledge of the probability of injury when working with the grinding stone, and Berry's awareness of the probability of danger which would necessitate complying with specific WAC regulations.

Second, Coleman urges us to direct that comparative fault should be applied to determine the extent of Berry's recovery. In *Teagle v. Fischer & Porter Co., supra,* plaintiff was injured by the explosion of a flowrator. In discussing the question of a manufacturer's liability, the court stated at page 155:

A product may be faultlessly manufactured and designed, yet still not be reasonably safe when placed in the hands of the ultimate user without first giving an adequate warning concerning the manner in which to safely use the product.

The court found as a matter of law that the flowrator was not reasonably safe because it was sold without adequate

warnings. The trial court had submitted the issue of contributory negligence[5] to the jury, but later removed it from consideration in the verdict. On appeal, the trial court's action was sustained. Concerning the question of contributory negligence, the court stated:

> *n. Contributory negligence.* Since the liability with which this Section deals is not based upon negligence of the seller, but is strict liability, the rule applied to strict liability cases (see § 524) applies. Contributory negligence of the plaintiff is not a defense when such negligence consists merely in a failure to discover the defect in the product, or to guard against the possibility of its existence. On the other hand the form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger, and commonly passes under the name of assumption of risk, is a defense under this Section as in other cases of strict liability. If the user or consumer discovers the defect and is aware of the danger, and nevertheless proceeds unreasonably to make use of the product and is injured by it, he is barred from recovery.

Restatement (Second) of Torts § 402A, comment *n* (1965). *See Products Liability: Contributory Negligence or Assumption of Risk as Defense Under Doctrine of Strict Liability in Tort,* Annot., 46 A.L.R.3d 240 (1972). Although under comment *n* a plaintiff would be barred from any recovery if the trier of fact found the plaintiff had voluntarily and unreasonably proceeded to encounter a known danger, the adoption of comparative negligence in this jurisdiction, *see* RCW 4.22.010, renders the plaintiff's conduct a damage–reducing factor only.

*Teagle v. Fischer & Porter Co., supra* at 157–58.[6]

---

[5]RCW 4.22.010 provides:

"Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages caused by negligence resulting in death or in injury to person or property, but any damages allowed shall be diminished in proportion to the percentage of negligence attributable to the party recovering."

[6]Although assumption of the risk might not be considered a negligent act by some (rather, a prior waiver), it would properly be a damage–reducing factor under a comparative *fault* concept.

■ Our court rejected the Wisconsin theory that *any* negligence on the plaintiff's part, including failure to use ordinary care in discovering the defect, should be considered by the jury as a damage–reducing factor. In Wisconsin, strict liability means negligence as a matter of law or per se negligence. *Powers v. Hunt–Wesson Foods, Inc.,* 64 Wis. 2d 532, 219 N.W.2d 393 (1974). In Washington, strict liability literally means strict liability: although a manufacturer is not an insurer, it cannot avoid liability by proving lack of negligence. The *Teagle* court further stated at page 159:

> This does not necessarily close the door to our adoption of the theory that any evidence of the plaintiff's contributory negligence should be considered as damage–reducing factors.

In *Little v. PPG Indus., Inc.,* 92 Wn.2d 118, 594 P.2d 911 (1979), the court confirmed Teagle's theory:

> Negligence of the deceased was also an issue in the case, and nothing that is said in this opinion is intended to affect the defense of contributory negligence. That such a defense may be asserted in a strict liability case, *see Teagle v. Fischer & Porter Co.,* 89 Wn.2d 149, 157 *et seq.,* 570 P.2d 438 (1977).

*Little v. PPG Indus., Inc., supra* at 126 n.5.

Therefore, the "assumption of the risk" type of contributory negligence is available to the defense in a strict liability action: if Berry voluntarily and unreasonably proceeded to encounter a known danger, then contributory negligence may be presented to the jury with appropriate instructions regarding the damage–reducing factor.

Judgment is affirmed.

GREEN, C.J., and MUNSON, J., concur.

Reconsideration denied July 19, 1979.

Review denied by Supreme Court September 21, 1979.