**TRUST CORPORATION OF MONTANA,** Personal Representative of the Estate of Marlin Everett Wagner, Deceased, on behalf of Cindy Pilecki, Kirk Wagner, Mark Wagner and Daisy Wagner, the legal heirs of Marlin Everett Wagner, Deceased, Plaintiffs,

v.

**PIPER AIRCRAFT CORPORATION,** Defendant.

No. CV–79–51–GF.

United States District Court, D. Montana, Great Falls Division.

Jan. 8, 1981.

Dennis Clarke, Smith, Baillie & Walsh, Great Falls, Mont., for plaintiffs.

Alexander Blewett, Jardine, Stephenson, Blewett & Weaver, Great Falls, Mont., for defendant.

## MEMORANDUM

HATFIELD, District Judge.

This action is a result of an airplane crash on July 25, 1976, at the Butte, Montana airport. The airplane, piloted by Marlin Everett Wagner, shortly after lift-off struck a telephone wire and thereafter crashed, killing, or severely injuring all on board. Plaintiff, Trust Corporation of Montana, brings this action as personal representative of the estate of decedent Wagner. Defendant, Piper Aircraft Corporation, is incorporated in Pennsylvania and has its principal place of business in Florida. Jurisdiction is invoked pursuant to 28 U.S.C. § 1332 as the amount exceeds the sum of $10,000 exclusive of costs, and the parties are citizens of different states.

Plaintiff's action is founded on strict products liability. The theory of plaintiff's complaint is that defendant is strictly liable for damages allegedly caused by a defective restraint system. The restraint system lacked shoulder harnesses which plaintiff claims would have prevented injury upon impact.

The case has been dubbed a "second collision" action in which the defect, although not causing the crash, allegedly enhanced the injury.

Plaintiff, pursuant to Rule 12(f), F.R. Civ.P. has moved to strike defendant's third, fourth and fifth affirmative defenses on the grounds said defenses are insufficient as a matter of law. The defenses are that Wagner, the pilot of the ill-fated aircraft involved here, sustained injury as a result of his own contributory negligence; that Wagner assumed the risk of injury; and that Wagner sustained injury due to his own misuse of the aircraft.

Present in this case is the overriding issue of whether comparative liability principles should apply in "second collision" products liability actions. For the reasons stated hereinafter, I conclude that comparative liability should apply and that the defenses as framed should be stricken. Accordingly, plaintiff's motion is granted.

■ The law, while still evolving in this area, is generally that a manufacturer of a product is subject to strict liability where it can be shown that his product was defectively designed so that it was unreasonably dangerous to the consumer or user and caused injury. *See, Brandenburger v. Toyota Motor Sales*, 162 Mont. 506, 513 P.2d 268 (1973). Here then plaintiff must first prove the crash was survivable; second, that the lack of a shoulder harness system was a defect, unreasonably dangerous, and, finally, that the defect caused injury.

■ A second collision action is viable even though the cause of the accident was not the defective condition alleged to have enhanced the injuries. *Brandenburger, supra.* In a crashworthiness case such as this, plaintiff must prove that the defect, though not necessarily the proximate cause of the accident, was, at least, a substantial cause of the injuries. *See, Fietzer v. Ford Motor Co.*, 590 F.2d 215 (7th Cir. 1978).

As to damage allocation, the Court of Appeals in the leading decision of *Larsen v. General Motors Corp.*, 391 F.2d 495, 503 (8th Cir. 1968) ruled:

> Any design defect not causing the accident would not subject the manufacturer to liability for the entire damage, but the manufacturer should be liable for that portion of the damage or injury caused by the defective design over and above the damage or injury that probably would have occurred as a result of the impact or collision absent the defective design.

The Montana Supreme Court followed the *Larsen* decision in *Brandenburger, supra*, 513 P.2d at 274.

In the instant case, plaintiff alleges essentially that he was subjected to enhanced injuries as a result of defendant's failure to provide a shoulder harness restraint system.

Plaintiff contends that if a shoulder harness had been available for use, Wagner's injuries would have been greatly reduced, perhaps to the point of saving his life. Plaintiff admits that the cause of the crash was not the design defect alleged to have enhanced Wagner's injuries.

Defendant Piper contends that the lack of shoulder harnesses in this 1965 aircraft is not a design defect and did not proximately cause any of Wagner's injuries. Furthermore, Piper asserts that plaintiff's claim here is barred because of Wagner's contributory negligence, assumption of risk and misuse of the aircraft. Defendant maintains that pilot Wagner was grossly negligent in the operation of the aircraft. In particular, Piper alleges that Wagner attempted to take off from the Butte airport with the plane over weight and the air temperature too high. In addition, Piper states that Wagner realized the problem, attempted a right turn and struck a telephone wire with the right wing which cartwheeled the airplane and caused it to crash.

■ Returning now to the question of the application of comparative fault principles in a strict liability action in Montana,[1] a review of the pertinent law in other jurisdictions persuaded this court that the Montana Supreme Court, if confronted with the issue would adopt the doctrine of "comparative fault"[2] in products liability actions. Essentially, the doctrine recognizes that defendants are strictly liable for injury caused from defective products, except that damages, if any, are reduced in proportion to plaintiff's own contribution to his loss or

injury. Product liability defendants may to this extent present evidence of plaintiff's culpable conduct as a partial defense.

Application of comparative principles to strict liability will not dilute the fundamental goals of strict liability. As the California Supreme Court stated when it adopted such principles in *Daly v. General Motors,* 144 Cal.Rptr. 380, 20 Cal.3d 725, 575 P.2d 1162 (1978):

> Plaintiffs will continue to be relieved of proving that the manufacturer or distributor was negligent in the production, design or dissemination of the article in question. Defendant's liability for injuries caused by a defective product remains strict. The principle of protecting the defenseless is likewise preserved, for plaintiff's recovery will be reduced *only* to the extent that his own lack of reasonable care contributed to his injury.

*Daly,* 144 Cal.Rptr. at 386, 575 P.2d at 1168.

In addition to the inherent fairness to all parties, another convincing reason to adopt comparative fault principles is that it relieves the inequities associated with absolute defenses which produce windfalls for manufacturers or absolute bars to asserting defenses which produce windfalls for plaintiffs.

Apportioning liability in products cases is sound, logical and inherently more equitable. Furthermore, the majority of states considering the issue have extended comparative principles to strict products liability.[3] *Daly, supra,* 144 Cal.Rptr. at 388, 575 P.2d at 1170.

1. *See, also, Zahrte v. Sturm, Ruger & Co.* 498 F.Supp. 389 (D.Mont.1980), wherein Judge Murray predicted that if the Montana Supreme Court was presented with the issue, it would adopt comparative fault principles in products liability actions.

2. In *Pan-Alaska Fisheries, Inc. v. Marine Const. & Design Co.,* 565 F.2d 1129 (9th Cir. 1977) the court in discussing the doctrine of comparative fault stated:
   ... whether we use the term comparative fault, contributory negligence, comparative causation, or even comparative blameworthiness, we are merely beating around the semantical bush seeking to achieve an equita-

ble method of allocating the responsibility for an injury or loss. It comes down to this: the defendant is strictly liable for the harm caused from his defective product, except that the award of damages shall be reduced in proportion to the plaintiff's contribution to his own loss or injury.
Id. at 1139.

3. Jurisdictions applying comparative principles in strict liability actions are: Alaska, California, Florida, Idaho, Minnesota, Mississippi, New Hampshire, New Jersey, Oregon, Texas, Washington and Wisconsin. *See, Edwards v. Sears, Roebuck & Co.,* 512 F.2d 276 (5th Cir. 1975); *Sun Valley Airlines, Inc. v. Avco-Ly-*

Commentaries[4] have argued that the task of merging comparative fault principles in products liability is impossible. Plaintiff argues that contributory negligence can only be a defense to negligence, that it is theoretically distinct from principles of strict products liability, and that contributory negligence therefore cannot be a defense to strict liability.[5] It is true that strict products liability theory eschews injection of traditional negligence. However, as the *Daly* court points out, it is merely the insistence on precise and fixed definitions of legal concepts which creates the conceptual difficulties in blending the principles of strict products liability and traditional negligence. *See, Daly, supra,* 144 Cal.Rptr. at 385, 575 P.2d at 1167.

The concepts of contributory negligence, assumption of risk, and misuse of the product overlap conceptually. *See, Baccelleri v. Hyster Co.,* 287 Or. 3, 597 P.2d 351, 354 (1979). Common to all these concepts is the existence of some type of blameworthy conduct on the part of plaintiff.

With the adoption of comparative fault principles the labels become less important as the trier of fact considers all blameworthy conduct which contributes to an injury, notwithstanding traditional labels. In addition, the harshness of the "all or nothing" legal effect connoted with these labels is ameliorated. Thus, this court rejects, as inconsistent with comparative fault concepts, the wooden formalism of fault related labels

> ... which either allows plaintiff to recover full damages, even though he was partially at fault, or which totally bars his recovery, even though the defendant was partially at fault....

*Pan-Alaska Fisheries, Inc. v. Marine Const. & Design Co.,* 565 F.2d 1129, 1139 (9th Cir. 1977) and cases cited therein; *see also, Daly v. General Motors Corp., supra.* Such labels and principles are inconsistent with comparative fault concepts.

This court is confident that the Montana Supreme Court, when presented with the issue, will apply comparative fault to strict products liability actions. The Montana Supreme Court ruled in *Oltz v. Toyota Motor Sales,* 166 Mont. 217, 531 P.2d 1341 (1975), that contributory negligence was a proper defense in a second collision strict liability case where the plaintiff (driver of the automobile) was found to be grossly negligent. No other Montana case has been cited which squarely addresses contributory negligence in a second collision products liability action. The *Oltz* decision is consistent with the adoption of comparative fault, as that decision clearly recognized plaintiff's contribution to his own injury. Adoption of

---

coming *Corp.,* 411 F.Supp. 598 (D.Idaho 1976); *Hagenbuch v. Snap-On Tools Corp.,* 339 F.Supp. 676 (D.N.H.1972); *Butaud v. Suburban Marine & Sporting Goods, Inc.,* 555 P.2d 42 (Alaska 1976); *Daly v. General Motors Corp.,* 20 Cal.3d 725, 575 P.2d 1162, 144 Cal.Rptr. 380 (1978); *West v. Caterpillar Tractor Co.,* 336 So.2d 80 (Fla.1976); *Busch v. Busch Constr., Inc.,* 262 N.W.2d 377 (Minn.1977); *Thibault v. Sears, Roebuck & Co.,* 118 N.H. 802, 395 A.2d 843 (1978); *Suter v. San Angelo Foundry & Mach. Co.,* 81 N.J. 150, 406 A.2d 140 (1979); *Baccelleri v. Hyster Co.,* 287 Or. 3, 597 P.2d 351 (1978); *Hamilton v. Motor Coach Indus., Inc.,* 560 S.W.2d 571 (Tex.1978); *Berry v. Coleman Systems Co.,* 23 Wash.App. 622, 596 P.2d 1365 (1979); *Dipple v. Sciano,* 37 Wis.2d 443, 155 N.W.2d 55 (1967). *See also,* Carestia, *Comparative Principles and Products Liability in Montana,* 41 Mont.L.Rev. 269 (1980).

4. *See, Daly v. General Motors Corp.,* 144 Cal. Rptr. 380, 20 Cal.3d 725, 575 P.2d 1162 (1978).

5. It is interesting to note that the defense of assumption of risk although recognized as a form of contributory negligence could, indeed, be asserted in strict liability as a complete bar to recovery. *See,* Comment "n" 2 Rest. of Torts 2d, § 402A. Even misuse could bar recovery although it "... occurs when the product user does not act in a manner ... expected of an ordinary reasonably prudent person ... in the same or similar circumstances." 1 Frumer and Friedman, PRODUCTS LIABILITY, § 15:01. It could be argued contrariwise that misuse is a form of negligence and it too is inconsistent with strict liability. *See,* for example, *Kirkland v. General Motors Corp.,* Okl., 521 P.2d 1353 (1974).

While the *Brown v. North American Manuf. Co.,* 176 Mont. 98, 576 P.2d 711 (1978), opinion suggests that traditional contributory negligence should not be injected and is not a defense in products liability actions, the court did not have before it the issue of comparative fault.

comparative fault does, however, change the harshness of contributory negligence as being a complete bar. Now, for instance, if the jury finds the defendant to be strictly liable, and also finds plaintiff's own fault contributed to 90% of his injury, the court will reduce the damage award by the percentage figure the jury has supplied.

The defense of assumption of risk was addressed in *Brown v. North Am. Mfg. Co.*, 176 Mont. 98, 576 P.2d 711, 719 (1978). There, the Montana Supreme Court stated that strict products liability was not absolute liability. Rather, it is relevant in strict products liability cases to consider conduct of the plaintiff which may break the chain of causation and operate to bar recovery. The court, quoting approvingly from Comment "n" of 2 Restatement of Torts 2d, § 402A, stated:

> . . . The form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger and commonly passes under the name of assumption of risk, is a defense under this section as in other cases of strict liability. If the user or consumer discovers the defect and is aware of the danger, and nevertheless proceeds unreasonably to make use of the product and is injured by it, he is barred from recovery.

The court made clear that assumption of risk is governed by the subjective standard, *i. e.*, personal knowledge of the plaintiff in realizing the existence of the defect or danger. Only if plaintiff realizes the defect or danger and voluntarily and unreasonably exposes himself to it will the assumption of risk defense apply and bar recovery. Since *Brown*, the Montana Supreme Court has once again commented on the defense of assumption of risk.

In *Kopischke v. First Continental Corp.*, Mont., 610 P.2d 668 (1980), a negligence case, the Montana Supreme Court stated in dicta that it would in the future follow the modern trend "and treat assumption of the risk like any other form of contributory negligence and apportion it under the comparative negligence statute." *Kopishke, supra*, 610 P.2d at 687. Thus it would appear the court has merged assumption of risk into the general scheme of liability assessment whereby the defense is just one of the factors to be considered in determining plaintiff's portion of fault.

This pronouncement by the court in *Kopishke* is a clear indication that the court would rule similarly, given the opportunity, in the products liability area. Such a ruling would be consistent with the national trend. Moreover, adoption of pure comparative fault necessarily entails the merger of assumption of risk (as a form of contributory negligence) into the general scheme of liability assessment according to degrees of fault.[6] *See, Daly, supra*, 144 Cal.Rptr. at 387, 575 P.2d at 1169.

■ The parties have not cited, and this court has not found, any Montana strict products liability case which discusses the defense of misuse of a product. Generally speaking, the law is that a manufacturer is not responsible for injuries resulting from abnormal or unintended use of his product if such use was not reasonable foreseeable. 1 Frumer and Friedman, Products Liability, § 15:01. Because the defense of misuse of the product necessarily involves foreseeability, the question becomes one of whether under these circumstances the crash and subsequent injuries were foreseeable.

Here the alleged design defect did not cause this accident. However, plaintiff alleges that the lack of shoulder harnesses was a substantial factor in causing the injuries. Furthermore, plaintiff persuasively contends that airplane crashes are readily foreseeable as an incident to normal and expected use. The conceptual difficulty here lies in applying the misuse doctrine to second collision cases.

■ Granted misuse of the product may have primarily caused the crash, but perhaps a substantial cause of the injuries was

---

**6.** The court directs the parties' attention to the *Daly, supra*, decision for a thorough discussion of the pure system of comparative fault.

due to some defect associated with the airplane's crashworthiness. In *Brandenburger, supra,* the court said "While automobiles are not made for the purpose of colliding with each other, a frequent and inevitable contingency of normal automobile use will result in collisions and injury-producing impacts." 513 P.2d at 274. The same can be said with regard to airplane crashes. Abnormal or unintended use of a product merely constitutes culpable conduct on the part of plaintiff. If, as contended by defendant, the injury resulted from a totally unforeseeable misuse of the product, the defense of misuse is appropriate. *Kroon v. Beech Aircraft Corp.,* 465 F.Supp. 1223, 1225 (M.D.Fla.1979); *Kay v. Cessna Aircraft Co.,* 548 F.2d 1370 (9th Cir. 1977). The court cannot say at this time that the use of this aircraft in this manner was so unforeseeable as to result in a complete defense, although defendant's factual allegations on the extent of misuse, if proven, will certainly diminish recovery in proportion to the degree of pilot Wagner's culpable conduct. *See, General Motors Corp. v. Hopkins,* Tex., 548 S.W.2d 344 (1977).

Since the determination has been that plaintiff's fault can be compared to the manufacturer's liability for a defective product, the question becomes what conduct of plaintiff is to be compared.

Here plaintiff seeks to begin examination at the moment of impact, ignoring the events leading up to the crash. Defendant, on the other hand, argues for a more comprehensive view of the crash, which is to say a consideration of all plaintiff's conduct contributing to the crash.

Plaintiff's position boils down to this: that the accident-causing factors and the injury-causing factors are qualitatively different and must be considered separately. Plaintiff argues that this court should exclude evidence dealing with the nature and cause of the crash and allow only that evidence pertaining to the enhancement of injuries as a result of Piper's failure to provide shoulder harnesses. Although plaintiff's position has some merit in a second collision type case, the modern trend rejects this piecemeal approach. Rather, inquiry focuses on the product design as an integrated whole, and a consideration of all the factors that contributed to the event which caused the injury. *Daly v. General Motors Corp., supra,* 144 Cal.Rptr. at 393, 575 P.2d at 1175; *Fietzer v. Ford Motor Co.,* 590 F.2d 215 (7th Cir. 1978).

The obligation of Piper to incorporate in its aircraft design an appropriate amount of crashworthiness cannot excuse the user from responsible operation. Similarly, since airplane crashes are foreseeable, an airplane manufacturer is not excused from a defective design which enhances injury or causes death in an otherwise survivable crash. Thus an examination of all the circumstances (*eg.* speed, angle, weight, etc.), prior to and after impact is proper in fairness to the parties. In short, all of plaintiff's conduct, regardless of labels attached to that conduct, is to be compared to defendant's liability. *See, Pan-Alaska, etc. v. Marine Const. & Design Co.,* 565 F.2d 1129, 1139 (9th Cir. 1977).

## CONCLUSION

Under the facts alleged, it is particularly appropriate in this case to apply comparative fault principles. Wagner's degree of responsibility for his own injuries must be an issue in the trial of the action against Piper under a second collision theory. Wagner should be held to assume responsibility for whatever portion of his injury is attributable to his own conduct. To disallow injection of plaintiff's own conduct in causing his injuries under these circumstances is to stretch products liability theory beyond the bounds of reason and justice, and to grant plaintiff an undeserved windfall. A ruling that any culpable conduct of pilot Wagner should not be considered by the court because such conduct would be labeled "contributory negligence" and as such be stricken by traditional products liability theory, would be to sanction a result wholly unreasonable and unacceptable to modern thinking in this area.

Under the facts alleged, the accident-causing fault of the pilot and the injury-

causing defects of the manufacturer are to be compared equally. Both manufacturer Piper and pilot Wagner should be held responsible when, but for the action of both, injury would have been less or none at all. Each should bear the legal responsibility for his share of fault.

Therefore, plaintiff's motion to strike defendant's third, fourth and fifth affirmative defenses is granted. Conduct by the plaintiff which could be termed contributory negligence, assumption of risk, and misuse, shall in the future be used, if applicable, only to compare fault and reduce damages, if any are proved.