[No. 4668-1-III.   Division Three.   January 10, 1984.]

LARRY BARTH, as *Administrator,* ET AL, *Respondents,*
v. RONALD ROCK, ET AL, *Appellants.*

*Dennis L. Fluegge, Halverson, Applegate & McDonald,
Floyd E. Ivey,* and *Westland, Sonderman & Egan,* for
appellants.

*Eugene G. Schuster* and *Critchlow & Williams,* for re-
spondents.

GREEN, J.—Ronald Rock, Kennewick General Hospital
and Dr. Said Nayebi appeal the vacating of a jury verdict
and granting of a new trial in a wrongful death action. We
affirm.

On June 16, 1977, Andrea Barth, a 5-year-old girl, broke

her arm while riding a bicycle. Her father took her to Kennewick General Hospital. Dr. Nayebi examined her there and performed a closed reduction. At that time Mr. Barth executed a standard "consent form". Andrea's arm began to swell so that her cast had to be split which altered the alignment of the fracture. A second surgery to correct this condition was scheduled for June 22. Andrea's mother executed a consent form prior to this surgery. Mr. Rock, a nurse anesthetist under contract with Kennewick General Hospital, administered the anesthetics. The general anesthetics used for this surgery were sodium pentothal, succinylcholine drip and nitrous oxide. Because a patient under general anesthetics requires ventilation, Andrea was ventilated through a mask which was placed over her mouth and nose. Mr. Rock controlled Andrea's breathing by squeezing an air bag.

The general anesthetics were started about 9:35 a.m. and surgery began about 10 a.m. At 10:55 a.m. Andrea's pulse rate was 120. Surgery proceeded without incident—until about 11 a.m. when Andrea began to move. Mr. Rock then administered additional sodium pentothal to keep her quiet. Immediately thereafter, Andrea's blood pressure dropped to 60 over 40 and her pulse fell until at 11:11 a.m. it was 15 beats per minute. There is a difference of opinion among the expert witnesses as to whether Dr. Nayebi should have administered cardiac massage instead of continuing with the surgery. Mr. Rock proceeded to give her two shots of atropine without response and administered epinephrine to which Andrea responded. Andrea was placed in intensive care and never regained consciousness.

On June 24 Andrea experienced respiratory arrest. She was transferred to Deaconess Hospital in Spokane the same day. The Barths, being informed brain scan tests showed brain death had occurred, decided to cease life support systems. Andrea died shortly thereafter. The autopsy listed the cause of her death as cerebral anoxia (lack of oxygen to the brain) and edema.

Larry Barth, individually and as administrator of And-

rea's estate, together with Betty Barth commenced this action for wrongful death against Dr. Nayebi, Mr. Rock and Kennewick General Hospital. After a 3–week trial, the jury returned a verdict in 45 minutes for defendants. The Barths moved for a new trial which was granted on the basis substantial justice was not done. Defendants appeal.

The doctor, anesthetist and hospital contend the verdict was supported by the evidence and the court abused its discretion by granting a new trial.

■ A trial court has discretion in ruling on a motion for a new trial, *State v. Hall,* 74 Wn.2d 726, 727, 446 P.2d 323 (1968); *State v. Gobin,* 73 Wn.2d 206, 208, 437 P.2d 389 (1968), and an order granting or denying a new trial will not be reversed except for abuse. *Detrick v. Garretson Packing Co.,* 73 Wn.2d 804, 812–13, 440 P.2d 834 (1968). Also, a much stronger showing of abuse will ordinarily be required to set aside an order granting a new trial than one denying a new trial. *Moore v. Smith,* 89 Wn.2d 932, 942, 578 P.2d 26 (1978). Here the court stated one of the reasons for granting a new trial was insufficient evidence to support the verdict, and thus substantial justice was not done. We agree.

■ CR 59(a)(9) provides that a trial judge may grant a new trial when substantial justice has not been done. This court in *Berry v. Coleman Sys. Co.,* 23 Wn. App. 622, 624– 25, 596 P.2d 1365 (1979), discussed the court's discretion to order retrial on "substantial justice" grounds and, quoting from *Olpinski v. Clement,* 73 Wn.2d 944, 442 P.2d 260 (1968), stated as follows:

> The trial court has the duty to see that justice prevails. He has the power in the exercise of his discretion to grant a new trial where substantial justice has not been done, but, to facilitate appellate review, he must state his reasons. We stated, in *Baxter v. Greyhound Corp.* [65 Wn.2d 421, 397 P.2d 857 (1964)], *supra* at 440:
>
> > The basic question posed by an order granting a new trial upon this ground, be it a civil or criminal action, is whether the losing party received a fair

trial. *State v. Taylor, supra* [60 Wn.2d 32, 371 P.2d 617 (1962)]. And, it is in this area of the new–trial field that the favored position of the trial judge and his sound discretion should be accorded the greatest deference, particularly when it involves the assessment of occurrences during the trial which cannot be made a part of the record, other than through the voice of the trial judge in stating reasons for the action taken.

If the trial judge, in the exercise of his best judgment determines that a fair trial has not been had, he has the alternative, in an appropriate situation, of granting a partial, a conditional, or an unconditional new trial. This decision, in turn, calls for a weighing of factors and values such as the complexity of the issues, the length of the trial, the degree and nature of the prejudicial incidents, the nature and amount of the verdict, the cost of retrial, the probable results, the desirability of concluding litigation, and such other circumstances as may be apropos to the particular situation.

*Olpinski v. Clement, supra* at 951.

It is true the credibility of the witnesses and the weight to be given the evidence are matters which rest within the province of the jury and even if the court is convinced the wrong verdict has been reached, it should not substitute its judgment for that of the jury if there is evidence which, if believed, would support the verdict rendered. *Retail Clerks Health & Welfare Trust Funds v. Shopland Supermarket, Inc.,* 96 Wn.2d 939, 943, 640 P.2d 1051 (1982); *Kammerer v. Western Gear Corp.,* 27 Wn. App. 512, 618 P.2d 1330 (1980), *aff'd,* 96 Wn.2d 416, 635 P.2d 708 (1981). However, here, as stated in the court's reasons for granting a new trial, all of the expert medical testimony laid the cause of Andrea's death to either Mr. Rock or Dr. Nayebi, except for one witness, Dr. Branford, who testified Andrea had an allergic reaction to sodium pentothal. He testified as follows:

A Well, one of the most recent references to this about pentothol [*sic*] or pentothal response is in a text from England. It's a two–volume text—*Grey and Nunn,*

which is widely used and respected in this country. And in that book a chapter on this particular aspect of anesthesia is written by Dr. John Dundee, and it is in this article that he talks about the 55 documented cases in literature, and we can give you all those references.

Q Of those 55 cases, now, are they confined to the sodium pentothal reaction?

A Yes.

. . .

Q All right, you say that Dr. Dundee and some of his associates published an article?

A They wrote the chapter in *Grey and Nunn* on drug reaction of this type.

Q And the 55 cases, all of them reaction to sodium pentothal?

A Correct.

It is evident Dr. Branford based his opinion regarding the 55 cases of allergic reaction to sodium pentothal on the Grey and Nunn textbook. He did not have the textbook with him at trial. After exceptions to the jury instructions were taken, counsel indicated he had obtained the textbook and made it available to the court. He told the judge the textbook stated there were 55 reported allergic reactions to barbiturates in general, rather than to sodium pentothal. The court refused to allow this information to be presented to the jury. The only evidence admitted was the following:

"It is hereby stipulated that there exists a book entitled *General Anesthesia, Fourth Edition,* 1980, by Grey and Nunn, in [sic] which has an article by Dr. Dundee."

Thus, the jury was unaware Dr. Branford's testimony was clearly erroneous and that the textbook he relied on in truth stated there were 55 reported cases of allergic reaction to barbiturates, not sodium pentothal.

Other expert witnesses testified that an allergic reaction to sodium pentothal was an event so rare there are only nine reported cases out of billions of surgeries over a period of 40 years and that Andrea did not experience any of the symptoms which appeared in the nine reported cases. Due to the speculative nature of the theory of allergic reaction

to sodium pentothal in this case and the fact Dr. Branford's testimony misled the jury, the trial court did not abuse its discretion in ordering a new trial for failure of substantial justice.

Furthermore, we find no abuse of discretion in the court's ruling on the motion to grant a new trial as to the instructions given on informed consent. Both Mr. Rock and Dr. Nayebi admit they did not inform the Barths of the risks attendant to general anesthesia, each believing the other had done so. The court was therefore correct in reasoning that the jury should have been instructed as a matter of law there was no informed consent. The jury would have been then left with the question of whether the parents would have consented to the use of sodium pentothal in spite of the risks shown at trial.

In view of the foregoing, we need not discuss the other reasons given in support of the granting of a new trial and challenged on appeal.

Affirmed and remanded for a new trial.

MUNSON, C.J., and McINTURFF, J., concur.

Reconsideration denied February 17, 1984.

Review denied by Supreme Court April 20, 1984.