## No. 92-568

## IN THE SUPREME COURT OF THE STATE OF MONTANA

## 1993

HART-ALBIN COMPANY and BROADWAY
REALTY CORPORATION,

> Plaintiffs, Appellants,
> and Cross-Respondents,

v.

McLEES INCORPORATED, ACE ELECTRIC,
INC., LEVITON MANUFACTURING CO.,
INC., RTB DEVELOPMENT, INC., and
JOHN DOE I through JOHN DOE IV,

> Defendants, Respondents,
> and Cross-Appellants.



FILED

FEB 17 1994

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Russell K. Fillner, Judge presiding.

COUNSEL OF RECORD:

> For Appellants:
>
> > L. Randall Bishop (argued), Jarussi & Bishop,
> > Billings, Montana
> >
> > Thomas S. Felker, Perry, Hiscock, Pierson &
> > Ryder, Inc., P.S., Seattle, Washington
>
> For Respondents:
>
> > L. D. Nybo (argued), Conklin, Nybo, Leveque &
> > Murphy, P.C., Great Falls, Montana

Submitted:   September 16, 1993

Decided:   February 17, 1994

Filed:

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Plaintiffs sued defendant Leviton Manufacturing Co., Inc., in strict liability, claiming an electrical extension cord connector manufactured by Leviton caused a fire in the Hart-Albin store in downtown Billings, Montana. A jury in the District Court for the Thirteenth Judicial District, Yellowstone County, apportioned fault 40 percent to Leviton and 60 percent to plaintiffs, and the court entered judgment for Leviton. We reverse and remand for retrial on limited issues relating to damages.

The dispositive issues are:

1. Did the District Court err in instructing the jury on Leviton's misuse defense?

2. Did the court err in prohibiting the plaintiffs from using videotaped depositions of Leviton's designated corporate witnesses?

3. Did the court err in directing a verdict against the plaintiffs on their punitive damage claim?

4. Did the court err in allowing the testimony of the plaintiffs' human factors expert?

In December of 1988, an early-morning fire caused extensive smoke damage in the flagship Hart-Albin department store located in downtown Billings, Montana. The store was closed for two months before reopening in February 1989. Just over a year later, Hart-Albin Company went out of business. Plaintiffs Broadway Realty Corporation, owner of the building in which the department store

2

was located, and Hart-Albin Company (hereafter referred to collectively as Hart-Albin) brought this action seeking recovery for damages, including loss of the business.

The fire started in a Christmas display suspended in the atrium of the store. Leviton, the only defendant remaining in the case at the time of trial, was the manufacturer of an electrical extension cord connector used in the Christmas display. During trial, Hart-Albin presented evidence that Leviton's Catalog No. 67 extension cord connector overheated and started the fire.

The Catalog No. 67 cord connector was sold unattached to any electrical cord. In order to fasten an electrical cord to the screw terminals inside the connector, the user had to open the clamshell casing of the connector. Then, when the cord connector was reassembled, brass contact blades inside the clamshell served as the electrical contact for the "male" end of a second electrical cord plugged into the cord connector.

In this case, when the clamshell casing was reassembled, one of the brass contact blades, which were curved, was put in backwards. This prevented a solid electrical contact between the contact blades and the "male" end of the second electrical cord, which was plugged into the cord connector.

Hart-Albin's theory was that the cord connector was a defective and unreasonably dangerous product because it was sold without assembly instructions and its misassembly caused it to

3

overheat. Leviton's defense was that no assembly instructions were needed with this particular type of cord connector, because of its design. Leviton also argued that the fire was a result of faulty construction of the Christmas display, including wiring code violations and use of flammable materials in violation of fire code.

After an eight-day trial, the jury answered a set of special interrogatories. It found that the fire was started by the Leviton cord connector, that the connector was unreasonably dangerous due to a failure to instruct, and that the defective connector was a proximate cause of Hart-Albin's damages. The jury also found that Hart-Albin misused the cord connector and that the misuse was a proximate cause of damages. It apportioned fault as stated above. Applying the principles of comparative negligence set forth at § 27-1-702, MCA, the District Court entered judgment for Leviton.

I

Did the court err in instructing the jury on Leviton's misuse defense?

Section 27-1-719, MCA, codifies strict liability law in Montana. It provides, at subsection (5):

> Except as provided in this subsection, contributory negligence is not a defense to the liability of a seller, based on strict liability in tort, for personal injury or property damage caused by a defectively manufactured or defectively designed product. A seller named as a defendant in an action based on strict liability in tort for damages to person or property caused by a defectively

4

designed or defectively manufactured product may assert the following affirmative defenses against the user or consumer, the legal representative of the user or consumer, or any person claiming damages by reason of injury to the user or consumer:

> (a) The user or consumer of the product discovered the defect or the defect was open and obvious and the user or consumer unreasonably made use of the product and was injured by it.

> (b) The product was unreasonably misused by the user or consumer and such misuse caused or contributed to the injury.

This statute limits defenses in strict liability actions to assumption of the risk under subsection (5)(a) and, as in this case, unreasonable misuse under subsection (5)(b).

Leviton contrasts cases concerning failure to warn or instruct with cases concerning manufacturing or design defects. It claims that a case concerning failure to warn or instruct does not clearly fall within the law of strict liability, but is indistinguishable from an action for negligence. On this basis, it asserts that the range of defenses is broadened.

Hart-Albin argues that misuse refers to use of a product other than for the intended purpose. It points out that, in this case, the cord connector was used precisely as intended: as a connector on an extension cord. It cites, in contrast, a classic example of misuse: a rotary lawnmower misused as a hedge trimmer. Hart-Albin argues that neither misassembly of the cord connector nor its use

5

in a flammable display constitutes misuse, because neither constitutes use of the product other than for the purpose intended.

Neither of these arguments is dispositive. This case was pled and tried under a theory of strict liability. Therefore, the available defenses are limited in Montana as provided in § 27-1-719, MCA. And, although this Court has not previously ruled on the definition of the term "unreasonably misused" as found in that statute, we now hold that the generally-accepted definition of misuse in relation to strict liability, as discussed below, applies.

Montana's federal district court has stated, in defining the defense of misuse, that a manufacturer is not responsible for injuries resulting from abnormal or unintended use of a product if such use was not reasonably foreseeable. Trust Corp. of Mont. v. Piper Aircraft Corp. (Mont. 1981), 506 F.Supp. 1093, 1097, citing 1 Frumer and Friedman, Products Liability, § 15.01. Generally, the defense of misuse refers to a use not foreseen by the manufacturer of the product. See Annotation, Products Liability: Product Misuse Defense, 65 A.L.R.4th 263 (1988). "Most cases have indicated that the key issue involved in a determination whether a product has been misused is foreseeability." American Law of Products Liability 3d, Vol. 3, § 42:8 (T. Travers ed. 1987). The definition of misuse, then, incorporates the concept of abnormal or unintended use, but emphasizes unforeseeability. The defense of

6

misuse is not available if the misuse of the product was reasonably foreseeable. We adopt the definition of misuse set forth in Trust Corp. of Mont., and now apply it to the facts of this case.

In answer to a written interrogatory concerning foreseeable misuse or misassembly of the Catalog No. 67 cord connector, Leviton stated that it "agrees that this product can be abused or misassembled." At trial, Hart-Albin elicited an admission from Leviton's corporate representative that he was aware that it was "possible" that the Catalog No. 67 cord connector could be misassembled as it was in this case.

We conclude Leviton admitted it was foreseeable that the Catalog No. 67 cord connector could be misused through misassembly. That admission on the part of Leviton, in light of the definition of misuse set forth above, leads us to conclude that the District Court erred in instructing the jury on the misuse defense as it related to misassembly of the cord connector.

Leviton maintains that Hart-Albin did not preserve an objection to the giving of the jury instruction concerning misuse but only to the burden of proof described therein. The record supports Hart-Albin's response that it made known throughout trial its position that, because misassembly of the cord connector was foreseeable, it did not constitute misuse. For example, at the close of Hart-Albin's case, in response to Leviton's motion for directed verdict, Hart-Albin's attorney argued:

7

> Leviton has admitted that they can foresee misuse and
> misassembly of this product, and that admission, foresee-
> able misassembly, takes the concept of misuse as under-
> stood in the law.  Completely out of the picture. [Sic]

We conclude Hart-Albin preserved its objection to a jury instruction concerning misuse through misassembly of the cord connector.

Misassembly was only one of the misuse theories presented by Leviton.  The other was use of the cord connector in a flammable Christmas display.  To the extent that this defense incorporated the idea that the cord connector was misassembled, the defense was prohibited because of the foreseeability of misassembly, as discussed above.  However, Leviton also presented expert testimony that the fire was caused by sparks resulting from power cord abuse unrelated to the cord connector.  This defense theory was clearly separate from the misassembly defense.

The jury did not accept this defense theory.  It answered "yes" to the question, "Was the fire started by the Leviton connector?"  If the jury had found that the fire was caused by sparks resulting from power cord abuse not related to the cord connector, there would be no explanation for this finding, or for the finding that Leviton was partially responsible for damages. Therefore, we conclude it is not necessary to retry the issue of whether the fire was caused by factors other than the cord connector.

In sum, we hold that the court erred in instructing the jury on Leviton's defense that Hart-Albin misused the cord connector through misassembly. Because the jury found that the fire was started by the Leviton connector, it is unnecessary to retry the issue of whether the fire started due to causes unrelated to misassembly of the cord connector.

II

Did the court err in prohibiting Hart-Albin from using videotaped depositions of Leviton's designated corporate witnesses?

The two witnesses in the videotaped depositions were present in the courtroom during the trial as Leviton's representatives. The District Court disallowed use of their deposition testimony on that basis. Hart-Albin argues that, despite the presence of the two witnesses at trial, their videotaped deposition testimony was admissible under Rule 32(a)(2), M.R.Civ.P., "for any purpose" because they were "managing agents" of Leviton.

We agree. "Managing agent" has been generously construed under both Rule 32, M.R.Civ.P., and the identical federal rule of civil procedure. Whether one is considered a managing agent depends on several factors, including the individual's right of general control, authority, and judgment within his department; whether the interests of the individual are identified to be those of the employer; and whether any person of higher authority possesses knowledge about the matters at issue. Clark Bros.

Contractors v. State (1985), 218 Mont. 490, 493, 710 P.2d 41, 43; Wright and Miller, Federal Practice and Procedure, § 2103 (1970).

The two witnesses in the videotaped depositions were Steve Campolo and Dennis Dandeneau. Campolo worked at Leviton's corporate headquarters as the head of the department responsible for the testing and evaluation of all products manufactured by Leviton and for getting those products to Underwriters Laboratory (UL) for testing and evaluation. He was designated by Leviton during discovery as the person within the company most knowledge-able regarding the Catalog No. 67 cord connector and UL approvals of that product.

Dandeneau had been employed by Leviton for twenty years and was the manager of Leviton's quality control department in Rhode Island, where the Catalog No. 67 cord connector was manufactured. In the pretrial order, Leviton did not list as a potential witness either of Dandeneau's supervisors in the Leviton corporate structure. Dandeneau and Campolo were the only Leviton employees who testified on Leviton's behalf at trial. They testified concerning testing, safety, and UL approval of the Catalog No. 67 cord connector. We hold that Campolo and Dandeneau were "managing agents" for purposes of Rule 32(a)(2), M.R.Civ.P.

Leviton argues that Hart-Albin had full opportunity to impeach the witnesses at trial using their depositions. However, "[t]here is no provision in Rule 32(a)(2) . . . which requires a finding of

10

unavailability of the witness or that notice was given of the intended use of a deposition at trial." Clark Bros., 710 P.2d at 43. The analysis under the federal rule has been similar:

> [Rule 32(a)] must be liberally construed. The trial court has discretion to exclude parts of the deposition that are unnecessarily repetitious in relation to the testimony of the party on the stand, but it may not refuse to allow the deposition to be used merely because the party is available to testify in person.

Wright and Miller, Federal Practice and Procedure, § 2145 (1970).

The purpose, as stated by Hart-Albin, for use of the video-taped deposition testimony at trial was to allow the jury to observe frank and unrehearsed answers to questions about Leviton's knowledge of possible problems with its Catalog No. 67 cord connector. We hold that the District Court erred in denying Hart-Albin's request to use the videotaped depositions of Campolo and Dandeneau at trial based on Rule 32(a)(2), M.R.Civ.P.

III

Did the court err in directing a verdict against Hart-Albin on its punitive damage claim?

Hart-Albin asserts that Leviton's actual malice was demonstrated by the testimony of its own witness, Campolo, that it marketed the Catalog No. 67 cord connector without assembly instructions despite full knowledge that misassembly of the cord connector could result in fire, electrical shock, or death by electrocution. Hart-Albin further asserts that clear and convinc-

11

ing evidence supported its claim that Leviton committed actual fraud in placing a UL safety mark on the inside surface of the Catalog No. 67 cord connector and in failing to properly identify the type of wire to be used with the product.

In light of our ruling that the deposition testimony of Campolo and Dandeneau was admissible into evidence under Rule 32(a)(2), M.R.Civ.P., the evidence supporting Hart-Albin's case may be different on remand. Therefore, we conclude that the issue of punitive damages must be reconsidered on remand. The District Court is instructed to determine on retrial whether Hart-Albin has presented a sufficient evidentiary basis supporting the claims of fraud or malice to allow the jury to consider the question of punitive damages.

IV

Did the court err in allowing the testimony of Hart-Albin's human factors expert?

This issue is raised by Leviton on cross-appeal. Dr. Dorris, the human factors expert, testified that human factors is the field of studies that looks at human capabilities and limitations and tries to design jobs, workplaces, and products so that human beings can use them comfortably, efficiently, productively, and safely. He testified that he holds a Ph.D. in industrial engineering and is employed in the field of product safety warnings and instructions.

12

He further testified that, in his opinion, warnings or instructions should have been provided with the Catalog No. 67 cord connector.

Leviton contends that Dorris is a "junk scientist" whose opinion misled the jury. Leviton states Dorris's testimony should have been rejected because he was testifying as to techniques not "generally accepted" as reliable in the relevant scientific community, citing Frye v. United States (D.C. Cir. 1923), 293 F. 1013.

In its recent opinion in Daubert v. Merrell Dow Pharmaceuticals, Inc. (1993), ___ U.S. ___, 113 S.Ct. 2786, 125 L.Ed.2d 469, the United States Supreme Court rejected the "general acceptance" standard for admission of expert testimony. It affirmed the more expansive test embodied in Rule 702, F.R.Evid., of whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue, stating that this is a flexible inquiry. Daubert, ___ U.S. at ___, 113 S.Ct. at 2796-97.

Construing Montana law, this Court has stated:

> [T]he determination of the qualification of a skilled or expert witness is a matter largely within the discretion of the trial judge and, in the absence of a showing of abuse, ordinarily will not be disturbed.

Goodnough v. State (1982), 199 Mont. 9, 18, 647 P.2d 364, 369. After reviewing the record, we conclude it supports the determination that Dorris testified regarding scientific knowledge that

13

would assist the jury in understanding or determining a fact in issue. We hold that the District Court did not abuse its discretion in allowing the testimony of Dorris.

## CONCLUSION

Because no error has been shown in the jury's findings that Leviton's defective cord connector started the fire and was a proximate cause of Hart-Albin's damages, that part of the verdict is upheld. The court erred in instructing the jury on the defense of misuse through misassembly, because such a defense was precluded by Leviton's admission of foreseeability. Therefore, application of principles of comparative negligence relieving Leviton of liability was error. We remand this case for retrial on the issue of damages, including redetermination of whether the jury should be allowed to consider punitive damages, based on the evidence presented. Because the issues on retrial will be limited, it is not necessary that we consider issues raised by Hart-Albin other than those herein discussed.

Remanded for further proceedings consistent with this Opinion.

_____
Chief Justice

14

We concur:

_John Conway Harrison_

_William E Hunt Sr_

_____

Justices

Justice Fred J. Weber specially concurs and dissents as follows:

I dissent from the majority opinion on Issue I. I concur in the dissent of Justice Karla M. Gray on Issues II and III. I concur in the majority opinion on Issue IV.

Issue I asks if the District Court erred in instructing the jury on Leviton's misuse defense. As pointed out by the majority, § 27-1-719(5)(b), MCA, provides that Leviton's defense in this strict liability case depends upon whether or not the product was "unreasonably misused" by Hart-Albin. The majority points out that this Court has not previously ruled on the definition of "unreasonable misuse;" and then holds that the generally accepted definition of misuse in relation to strict liability applies. The majority then makes the following statement:

> Montana's federal district court has stated, in defining the defense of misuse, that a manufacturer is not responsible for injuries resulting from abnormal or unintended use of a product if such use <u>was not reasonably foreseeable</u>. Trust Corp. of Mont. v. Piper Aircraft Corp. (Mont. 1981), 506 F.Supp. 1093, 1097, citing 1 Frumer and Friedman, Products Liability § 15.01. . . . [Emphasis supplied.]

The majority states that it adopts the foregoing <u>Trust Corp. of Mont.</u> definition of misuse. It further states that the defense of misuse is not available if the misuse of the product was "reasonably foreseeable."

In analyzing the evidence, the majority points out that Leviton's interrogatory answer stated that it "agrees that this product can be abused or misassembled." In addition, the Leviton representative stated that he was aware that it was "possible" that

16

the cord connector could be misassembled. From that evidence, the majority concludes that Leviton admitted it was foreseeable that the cord connector could be misassembled and that such admission by Leviton eliminates its argument on misuse.

Leviton's admissions that it was "possible" that the cord connector could be misassembled do not meet the test of Trust Corp. of Mont. Under that test the manufacturer is not responsible if such use was not reasonably foreseeable. The majority has disregarded the aspect of reasonableness. It has concluded that mere foreseeability is the same as reasonable foreseeability. Neither of the admissions by Leviton establish that it was reasonably foreseeable that the cord connector would be misassembled. Leviton's admissions are perfectly consistent with its contention--while it is possible to misassemble, such misassembly could only occur upon unreasonable misuse. The majority opinion does not consider whether or not the use on the part of Hart-Albin could be classed as reasonably foreseeable. The effect of the majority opinion is to impose strict liability on Leviton without giving to the trier of fact, a jury in this instance, the obligation to determine whether or not the misuse was unreasonable and whether or not the misuse was reasonably foreseeable. I conclude this effectively eliminates Leviton's statutory right under § 27-1-719, MCA, to prove that Hart-Albin unreasonably misused the cord connector.

I dissent from the conclusion on Issue I by the majority opinion which holds that the court erred in instructing the jury on

17

Leviton's defense that Hart-Albin misused the cord connector through misassembly. I would therefore grant a retrial on Issue I.

_____
Justice

18

Justice Karla M. Gray, concurring in part and dissenting in part.

I concur in the Court's opinion on issues one and four. I dissent from the opinion on issue two regarding the use of certain depositions and, because the Court's resolution of issue three is premised on the resolution of issue two, I dissent on that issue as well.

Rule 32(a) of the Montana Rules of Civil Procedure allows any part or all of a deposition to be used against a party for any purpose if certain enumerated conditions are met. In pertinent part, the rule authorizes the use of depositions for any purpose if the deponent is designated under Rule 30(b)(6) or 31(a), M.R.Civ.P., to testify on behalf of a corporation. Rule 32(a)(2), M.R.Civ.P. That basis for allowing the use of the depositions at issue here is neither asserted by Hart-Albin nor relied on by the Court. It is not applicable on the record before us.

Rule 32(a)(2), M.R.Civ.P., also allows such use of depositions if the deponent is "an officer, director, or managing agent" of the corporation. The Court holds that Stephen Campolo and Dennis Dandeneau were managing agents of Leviton under this Rule and, therefore, that the District Court erred in denying Hart-Albin's requested use of their depositions. I disagree.

It is my view that the Court misapplies or, indeed, fails to apply the Clark Bros. factors to these individuals. The applicable factors are the individual's right to general control, authority,

19

and judgment within his department; whether the interests of the individual are identified to be those of the employer; and whether any person of higher authority possesses knowledge about the matters at issue. Clark Bros., 710 P.2d at 43. I will apply the factors to Campolo and Dandeneau separately.

The burden of meeting the Clark Bros. factors is on the party seeking use of the depositions under Rule 32(a)(2), M.R.Civ.P. While the record reflects that Campolo was the director of Leviton's corporate testing laboratory and agency approval department, the record does not establish that that position at Leviton gives Campolo the right to general control, authority and judgment within the department. Thus, the first factor is not met here. Nor does the record support the Court's statement that Campolo was designated as the person within Leviton most knowledgeable with regard to the cord connector at issue and UL approvals of the connector. Indeed, the "discovery" to which the Court refers is not part of the transmitted record on appeal. Moreover, Hart-Albin's only statement in this regard is that the transcript supports a designation by Leviton that Campolo was the most knowledgeable person. However, the transcript reference to Campolo's testimony reflects only the following:

Q. You have been designated by Leviton Manufacturing Company to come here and testify at this trial, have you not?

A. Yes, sir.

Q. In fact, when I went back to New York to the offices of Leviton, you were designated there as the person that I should depose at that time and find out certain facts about this particular product, catalog 67 cord connector,

20

weren't you?

A. That was the outcome, yes.

Nothing therein supports a designation by Leviton of the type made by the Court. Thus, the third factor is not met here.

I have even greater concerns regarding the Court's conclusion that Dandeneau was a managing agent of Leviton. A careful reading of the Court's opinion makes it clear that Dandeneau did not meet even the first Clark Bros. factor. He was not the supervisor of Leviton's quality control department in Rhode Island. He was a manager in that department and he had a department supervisor. There also was a Leviton vice-president of quality control. Thus, the record does not establish that Dandeneau had the right to general control, authority and judgment within his department. In addition, no showing was made that these persons of higher authority in Dandeneau's chain of command did not possess knowledge of the matters at issue pursuant to the third factor. Finally, the Court finds some relevance in the fact that Campolo and Dandeneau were the only Leviton employee witnesses at trial. I submit that this consideration is totally irrelevant under Rule 32(a), M.R.Civ.P., and Clark Bros. in determining who is, and who is not, a "managing agent."

The effect of the Court's decision is to render every corporate employee at any managerial level who is identified as a witness or as having knowledge of matters at issue a "managing agent." Such a result is at odds with the requirements of Clark Bros. More importantly, it voids the important limitation on the

21

use of depositions "for any purpose" which is set forth in Rule 32(a), M.R.Civ.P.  I would affirm the District Court on this issue.

_____
Justice

22

Justice Terry N. Trieweiler specially concurring in part and dissenting in part.

I concur with the majority's holding under Issues I, II, and IV.

With regard to Issue I, I would simply add that defendants' product was found to be defective because the manufacturer failed to instruct the purchaser or user of that product on how to assemble it. The jury found that that defect caused misassembly of the product, and that misassembly caused the fire in plaintiffs' place of business. The misassembly, which resulted from the manufacturer's failure to instruct, cannot, as a matter of law, be misuse. To hold otherwise would be to hold that the defect created by the manufacturer can cause an affirmative defense to the manufacturer's own conduct or omission. Such a result would make no sense under the traditional principles of product liability law.

I would also add that placement of the cord connector near a flammable object cannot, as a matter of law, constitute misuse. So long as the cord connector was being used for its intended purpose, to connect electrical cords, it was not being misused as that term is defined in product liability law. Its misplacement may have been negligent. However, contributory negligence was not a defense to plaintiffs' claim in this case pursuant to § 27-1-719(5), MCA.

Under Issue III, I agree with the majority's reversal of the District Court's directed verdict in favor of defendants. However, I conclude, based on the deposition testimony which this Court has now held admissible, that plaintiffs have presented sufficient

23

evidence to raise a factual issue regarding their entitlement to punitive damages under § 27-1-221(1), MCA. Pursuant to that statute, punitive damages may be awarded where a defendant is aware of facts which create a high probability of injury to a plaintiff and deliberately proceeds to act in conscious or intentional disregard of the potential for injury. Based upon the deposition testimony of Steve Campolo, which this Court has now held was admissible, it is clear that Leviton knew that warnings, wiring diagrams, and assembly instructions were necessary for its Catalog No. 67 cord connector, but that it failed to provide them. It is also apparent that Leviton knew that if the cord connector was misassembled, the exact type of damage can occur which occurred in this case. In spite of this knowledge, Leviton not only failed to provide the necessary instructions or diagrams, but continued to market the cord connector with an Underwriters Laboratory designation which it had been instructed by that organization to remove.

The decision whether or not a factual issue has been raised regarding punitive damages will have to be based on the testimony that this Court has now held to be admissible. That testimony will not change from the time that this case is shipped from our clerk's office back to the District Court. Therefore, the District Court is in no better position to rule on this issue than we are. Furthermore, this issue is properly before this Court based on the issues raised by the parties on appeal in this case.

24

Therefore, while I concur in the majority's decision to reverse the District Court's directed verdict on the issue of punitive damages, I dissent from that part of the majority opinion which concludes that whether or not a factual issue regarding punitive damages has been raised must necessarily be decided upon remand by the District Court.

For these reasons, and with these qualifications, I concur with part of the majority opinion, and dissent from part of that opinion.

_____
Justice

25

February 17, 1994

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

L. Randall Bishop
JARUSSI & BISHOP
P.O. Box 3353
Billings, MT 59103-3353

Thomas S. Felker
PEERY, HISCOCK, PIERSON, & RYDER, INC., P.S.
505 Madison Street, Suite 300
Seattle, WA 98104

L.D. Nybo
CONKLIN, NYBO, LEVEQUE & MURPHY, P.C.
P.O. Box 2049
Great Falls, MT 59403-2049

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
    Deputy